Defendant was arrested on site without an arrest warrant on November 22, 1991 for violation of the June 1991Public Act 91-3, 134 which prohibits the sale of out-of-state lottery tickets as follows: "(a) A person is guilty of sale of an out-of-state lottery ticket when he sells, delivers, advertises or offers for sale in this state, for a fee, any lottery ticket for any out-of-state lottery game. (b) Sale of an out-of-state lottery ticket is a Class A misdemeanor."
Immediately following her arrest, Special Investigators of the Connecticut Division of Special Revenue Investigative Unit executed a search warrant of defendant's business premises. The search warrant had been obtained on November 15, 1991, based upon prior investigation
On February 5, 1992, defendant filed a Motion to Dismiss the prosecution based upon "the insufficiency of the affidavit relied upon for the issuance of the arrest warrant" and a Motion to Suppress the results and evidence obtained from the search and seizure.
The motions were heard before the undersigned on May 13, 1992, at which time it was agreed that since this was an on-site arrest, not a warrant arrest, the Motion to Dismiss would be treated as a motion based on insufficiency of evidence to justify placing CT Page 5730 the defendant on trial, pursuant to Connecticut Practice Book 815(5). Since the issue to be determined is whether or not the State has sufficient evidence to justify placing the defendant on trial, State v. Mitchell, 204 Conn. 187, 206 (1987), the court must first decide the Motion to Suppress.
Connecticut General Statutes 54-33f provides that a person aggrieved by a search and seizure may move the court to suppress his or her property for use as evidence under specified circumstances. See also Connecticut Practice Book 820 et seq. Although defendant alleges that the search was unlawful and unconstitutional, she has failed to allege in her Motion to Suppress the specific grounds on which she is proceeding. Looking to the Motion to Dismiss, where defendant erroneously attacked the search warrant affidavit as if it were an arrest warrant affidavit, the court must assume that defendant is claiming there was not probable cause for believing the existence of the grounds on which the search warrant was issued.
On a motion to suppress, defendant has the burden of overcoming the presumption of validity attaching to determinations of probable cause by a judicial officer and proving by a fair preponderance of the evidence that her rights were violated. State v. Mariano,152 Conn. 85, 91 (1964); State v. Williams, 169 Conn. 322,326-330 (1975), cert. denied, 380 U.S. 943; and State v. Couture,194 Conn. 530, 536 (1984), and federal cases cited therein.
In reviewing the sufficiency of an affidavit for a search warrant, the standard is whether the judicial authority had a substantial basis for concluding that a search would uncover evidence of wrongdoing. It is only a probability, not a prima facie showing of criminal activity, that is the standard of probable cause. State v. Couture, 194 Conn. 530, 546. The court must confine itself to the facts which appear on the face of the affidavit or which properly may be inferred therefrom and, testing those facts with common sense and reality, determine whether there is probable cause to believe that evidence of a crime will be found at the given location. Id., 194 Conn. at 536.
Here, the affidavit is based in most part upon firsthand knowledge of one of the affiants who personally went to defendant's package store which advertised the availability of "Mass. Millions" lottery tickets, requested a Massachusetts lottery ticket from defendant and was given a $2.00 Massachusetts lottery ticket for a drawing that date and a green paper with the 12 signs of the zodiac. When the affiant asked the cost, he alleges defendant told him that the chart was two dollars, which he paid. The affiant further alleges that it was obvious to him that the paper alone would not be worth the two dollar purchase price, such that the sale of the piece of paper containing the 12 signs of the zodiac for two dollars and including a "free" out-of-state lottery ticket was a guise or CT Page 5731 sham transaction to accomplish an illegal act, the sale of an out-of-state lottery ticket.
Applying common-sense to the facts which appear on the face of the affidavit and the reasonable inferences which can be drawn therefrom, it was not unreasonable for the issuing judge to determine that there was a strong probability that evidence of the sale of out-of-state lottery tickets was located at defendant's package store and to issue the search warrant. Accordingly, the Motion to Suppress is denied.
Turning now to the Motion to Dismiss, at the evidentiary hearing, Special Revenue Investigator Jose Collette testified that on November 19, 1992 he went to defendant's package store, asked defendant if she had any out-of-state lottery tickets to which she replied she had one and asked if he wanted it. Defendant then accepted two dollars for the ticket and one zodiac sheet. Again, on November 22, 1991, Investigator Collette returned to defendant's package store and addressed the defendant, specifically requesting out-of-state lottery tickets, asked her if he could buy three, to which she responded "Yes", and paid her six dollars in exchange for which she handed him three out-of-state lottery tickets and one zodiac paper. Defendant was then arrested on site for sale of out-of-state lottery tickets. Thereafter, the search was completed, which resulted in the seizure of 65 out-of-state lottery tickets, approximately 14 for a current drawing, 22 expired tickets for drawings before October 1, 1991, the effective date on the act, and the balance for drawings which had occurred between October 1, 1991 and November 21, 1991.
"On a motion to dismiss an information, the proferred proof is to be viewed most favorably to the state." State v. Morrill,193 Conn. 602, 611 (1984).
Defendant claims that she was not selling out-of-state lottery tickets but giving them away as a free gift in connection with the sale of a zodiac chart.
The statute prohibits the sale, delivery, advertising or offering for sale in this state, for a fee, any lottery ticket of any out-of-state lottery game. The statutory terms are not specifically defined in the public act or otherwise in the penal code. Accordingly, to determine if there is probable cause to find that this transaction was a "sale" or delivery for a "fee," the court must give the words their common meaning according to existing case law, legal treatises or dictionaries. A "sale" occurs with "an exchange of goods or services for an amount of money or its equivalent." The American Heritage Dictionary, Second College Edition. See also Conn. Gen. Stat. 12-407(2)(a) and Conn. Gen. Stat. 42a-2-106(1). This is consistent with the statutory language itself which includes CT Page 5732 delivery and requires that a fee be involved. The term "fee" is generally defined to be "remuneration charged for the rendering of professional services — `compensation often in the form of a fixed charge for a professional service or for a special and requested exercise of talent or skill;' Webster's Third New International Dictionary; `payment asked or given for professional services, admissions, licenses, tuition, et cetera, charge', Webster's Second New World Dictionary." State v. Allen, 37 Conn. Sup. 506, 510.
Under the circumstances of this arrest, where the State intends to offer proof that the fee charged was a fee per out-of-state lottery ticket, not a fee per zodiac chart, and that the zodiac chart did not have a fair market value of two dollars, together with the other evidence summarized above, the State has established sufficient probable cause to continue with the prosecution of this matter and defendant is not entitled to a dismissal as a matter of law. Sufficient facts exist from which a jury could find that defendant committed the alleged offense. State v. Mitchell, 204 Conn. 187, 205-207
(1987). Defendant's claim that the out-of-state lottery tickets were a free gift and that she was merely selling zodiac charts is an issue of fact for the jury, not a matter of law.
Accordingly, the Motion to Dismiss is also denied.